IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BRANDON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-4852 |
| v. | : | |
| GEORGE W. HILL CORRECTIONAL FACILITY (AKA) THE GEO GROUP, MEDICAL SERVICES DEPT., WARDEN AS OF 7-26-18, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                        December 18, 2018

      The *pro se* plaintiff brings this action under 42 U.S.C. § 1983 against a county correctional facility, its medical services department, and the warden of the facility for purported constitutional violations arising from (1) his housing with an excessive number of inmates in an intake holding cell where they had to, *inter alia*, (a) sleep on the floor, (b) urinate in bottles or bags that they stored near their heads when they slept, (c) go to another cell with a hole in the ground to use the bathroom, (d) walk through a floor covered in urine, (2) his housing with two other inmates in a two-person cell in which he had to sleep on a bunk placed on the floor near the toilet, (3) his having to eat food near the toilet in the cell, (4) the inadequate medical treatment he received after he hurt his elbow when he tripped and fell in his cell, and (5) the failure of the correctional facility staff to provide him with grievance forms once requested. The plaintiff has also applied for leave to proceed *in forma pauperis*.

      As discussed below, the court will grant the plaintiff leave to proceed *in forma pauperis* because he is unable to prepay the costs to commence this action. Based on the court's screening

of the complaint, the court must dismiss the complaint at this time because the county correctional facility and its medical department are not proper defendants under section 1983 and he failed to include sufficient allegations to assert a claim against the warden. Additionally, concerning the substance of the claims, the plaintiff, who was a pretrial detainee during the relevant period, has failed to state a claim relating to the conditions of his confinement because he has not plausibly alleged that the conditions amounted to punishment. The plaintiff may also not maintain a claim regarding the lack of access to grievance forms because, while potentially relevant to whether he exhausted his claims under the Prison Litigation Reform Act, the lack of access does not provide an independent basis for a constitutional claim. Finally, the allegations in the complaint do not demonstrate that any officials at the correctional facility were deliberately indifferent to the plaintiff's serious medical needs.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

On November 1, 2018, the clerk of court docketed a complaint filed by the *pro se* plaintiff, David Brandon ("Brandon"), in which he names as defendants, the George W. Hill Correctional Facility ("GWHCF"), the "Medical Services Dept." and the "Warden as of 7-26-18." *See* Doc. No. 1. In this complaint, Brandon asserts claims under 42 U.S.C. § 1983 arising from the alleged conditions of confinement and the lack of appropriate medical treatment he received during his incarceration at GWHCF. *See generally* Compl. at ECF pp. 7, 9, 10, 12, 17.

Brandon alleges that from July 26, 2018, to July 27, 2018, he was a pretrial detainee and incarcerated in the intake section of GWHCF with ten to twelve other inmates and no toilet. *See id.* at ECF pp. 7, 8, 9. If any of the inmates in intake had to use the bathroom, they were led to a cell with a hole in the floor. *See id.* Although Brandon and the other inmates asked for grievance forms to complain about the conditions, none were provided to them. *See id.* at ECF pp. 7, 9.

Brandon and the other inmates were later moved to a large holding cell where approximately 30 of them had to sleep on the floor. *See id.* While in the holding cell, they had to urinate in empty milk cartons or plastic bags and had to keep these items next to their heads while they slept. *See id.* To the extent that any inmates had to return to the cell with the hole in the floor to use the bathroom, the floor in this cell was covered in urine, so they would have to walk through the urine to get to the hole and then would carry the urine back to the floor of the large holding cell (and upon which they had to sleep). *See id.*

From July 28, 2018, to October 9, 2018, GWHCF placed Brandon in a two-man cell with two other inmates.[1] *See id.* at ECF pp. 7, 9, 10. Brandon had to sleep on a "Stack a Bunk" on the floor near the sink and toilet, where drops of water and urine would hit him as he laid on the bunk. *See id.* at ECF p. 7. He and his fellow inmates became frustrated about these conditions and they also had to eat in the cell near the toilet. *See id.*

While in this two-man cell, Brandon tripped over the bed on the floor and hit his right elbow on the sink. *See id.* at ECF pp. 7, 9, 10. This caused him "great pain" and he "severely bruised" his elbow and suffered swelling there. *See id.* at ECF pp. 7, 10. He also reported feeling pins and needles in his right arm from August 8, 2018, to the present. *See id.* at ECF pp. 7, 10. He received an x-ray on his elbow, but he filed a grievance to get a MRI but did not receive a response to the grievance from GWHCF officials.[2] *See id.* at ECF pp. 7, 9, 10, 12.

---

[1] Brandon alleges that he filed grievances with respect to these conditions, but he did not receive a response to them. *See* Compl. at ECF pp. 9, 12.

[2] Brandon attached grievance forms relating to his elbow issue to the complaint. The first grievance form is dated for September 21, 2018, and it states that Brandon saw Dr. Phillips on September 18, 2018, for his elbow pain and Dr. Phillips diagnosed him with carpel tunnel syndrome. *See* Compl. at ECF p. 13. Brandon stated that he was seeking a second opinion because he was experiencing pain and a feeling of pins and needles radiating from his elbow. *See id.* He also sought a MRI on his elbow "ASAP" because he was losing strength in his arm. *See id.*

The second grievance form is a medical request form dated for September 30, 2018, where Brandon is asking to renew his medication and see the doctor again due to the severe and radiating pain and the feeling of pins and needles. *See id.* at ECF p. 14. The third grievance form appears to be signed in October 2018, and in it Brandon states that the pins and needles feeling in his elbow is increasing and he was having a difficult time writing. *See id.* at ECF

Based on the above allegations, Brandon is seeking damages for pain and suffering as well as punitive damages. *See id.* at ECF p. 9.

When Brandon sent the complaint for filing with the clerk of court, he did not remit the filing fee and administrative fee or apply for leave to proceed *in forma pauperis*. Due to these failures, the court entered an order on November 13, 2018, which directed Brandon to, within 30 days, either submit $400.00 (the aggregated filing fee and administrative fee) to the clerk of court or file an application for leave to proceed *in forma pauperis*. *See* Order at 1, Doc. No. 3. In addition, the court directed him to clarify whether he was at the Bowling Green Brandywine Treatment Center because of a criminal conviction, a parole or probation violation, or a violation of the terms of a diversionary program or pretrial release so that the court could determine if he is subject to the Prison Litigation Reform Act ("PLRA").[3] *See id.* at 1–2. The court also directed Brandon to submit a certified copy of his prisoner trust fund account statement if he was at the treatment center because of a conviction or violation. *See id.* at 2.

On December 10, 2018, the court received Brandon's application for leave to proceed *in forma pauperis* (the "IFP Application") and prisoner trust fund account statement. *See* Doc. Nos. 4, 5. These documents indicate that Brandon has been incarcerated at GWHCF since November 2, 2018.[4]

---

p. 15. Brandon asserted that he was losing strength in his right arm and needed to get a MRI as soon as possible. *See id.* He was also running out of medication, and he was seeking a prescription for a longer period. *See id.* The final two attached grievance forms are dated for October 6, 2018, and Brandon again repeats his request for a MRI on his elbow and requests more medication. *See id.* at ECF pp. 16, 17.

[3] In the complaint, Brandon indicated that his address was not at GWHCF; instead, he provided the address for the Bowling Green Brandywine Treatment Center. *See* Compl. at ECF p. 1 (indicating address of 1375 Newark Road, Kennett Square, PA 19348); *see also* https://www.bowlinggreenbrandywine.com (showing business address of 1375 Newark Road, Kennett Square, PA 19348).

[4] Since the complaint alleges that Brandon was also incarcerated at GWHCF from July 2018 until at least October 9, 2018, he is subject to the requirements of the PLRA.

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131-32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

5

Here, after reviewing the IFP Application and the prisoner trust fund account statement, it appears that Brandon is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[5]

### B. Standard of Review of Complaints Under 28 U.S.C. § 1915(e)(2)(B)

Because the court has granted Brandon leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Deutsch*, 67 F.3d at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

---

[5] As a prisoner, Brandon is obligated to pay the filing fee in installments in accordance with the PLRA. *See* 28 U.S.C. § 1915(b).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

### C. Analysis

To succeed on claims under section 1983, "a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States, and he must show that the deprivation was committed by a person acting under color of state law." *Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam) (citing *West v. Atkins*, 487 U.S. 42, 47 (1988)). As discussed below, Brandon has failed to state a cognizable claim under section 1983 based on the allegations in the complaint.

#### 1. Deficiencies with the Named Defendants

Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* (emphasis added).

As evidenced by a review of the statute, section 1983 "applies only to 'persons.'" *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995). GWHCF is the county prison for Delaware County. *See Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) (stating that "Delaware County Prison[ is] now known as the George W. Hill Correctional Facility"), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). A county correctional facility, such as GWHCF, is not a "person" under section 1983. *See Ignudo v. McPhearson*, No. Civ.A. 03-5459, 2004 WL 1320896, at *2 (E.D. Pa. June 10, 2004) ("[Plaintiff] also names as a Defendant the George W. Hill Correctional Facility. The George W. Hill Correctional Facility is not a legal entity susceptible to suit."); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983") (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983). Accordingly, the court will dismiss with prejudice Brandon's claims against GWHCF.[6]

---

[6] In the complaint, Brandon notes that GWHCF is also known as The Geo Group. *See* Compl. at ECF p. 4. To the extent that The Geo Group provides services at GWHCF, it acts under color of state law and could be liable under

Brandon also names the "Medical Services Dept." as a defendant. GWHCF's medical department, like GWHCF itself, is not a person subject to suit under section 1983. *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that prison medical department was not person for purposes of section 1983). Therefore, the court must also dismiss Brandon's claims against the "Medical Services Dept."

For his final defendant, Brandon names the "Warden as of 7-26-18." Concerning claims against the warden, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are two theories of supervisory liability when an individual defendant is a supervisor: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which

---

section 1983 if its policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of section 1983); *French v. The GEO Grp., Inc.*, Civ. A. No. 18-CV-4312, 2018 WL 4929859, at *2 (E.D. Pa. Oct. 10, 2018) ("The GEO Group acts under color of state law by providing services for the George W. Hill Correctional Facility."); *Regan*, 2009 WL 650384, at *3, n.5 ("For purposes of Plaintiff's § 1983 claims, Defendant GEO Group, a private company, was acting under the color of state law since it provided daily functional services for the Delaware County Prison.").

If Brandon is seeking to proceed with a section 1983 claim against The Geo Group, Inc., he must allege that it violated his constitutional rights because of a custom or policy that it adopted. *See Cephas v. George W. Hill Corr. Fac.*, Civ. A. No. 09-6014, 2010 WL 2854149, at *2 (E.D. Pa. July 20, 2010) (explaining that *pro se* prisoner plaintiff seeking to assert claim against The Geo Group, Inc. must allege that institutional policy or custom caused violation of plaintiff's rights, and dismissing complaint because it did not contain any such allegations). To assert a plausible claim under section 1983, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Customs" are practices so permanent and well-settled as to virtually constitute law. *Monell*, 436 U.S. at 691. Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

Here, Brandon has not included sufficient allegations in the complaint to assert a section 1983 claim against The Geo Group, Inc.

directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Here, Brandon has not stated a claim for liability against the warden because he does not mention the warden in the body of the complaint. As such, the court must dismiss Brandon's claims against the warden because he does not allege that the warden was personally involved in any of the claimed constitutional violations or that he is a policymaker who established a policy, practice or custom which directly caused constitutional harm to Brandon.

At bottom, Brandon cannot move forward on his complaint as pleaded because he has not named a proper individual or entity as a defendant at this time. Thus, the complaint is subject to dismissal for this reason alone. Nonetheless, as some of Brandon's claims suffer from other deficiencies, the court will address them as well below.

### 2. Conditions of Confinement Claims

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 158 n.13, 166 (3d Cir. 2005). Here, Brandon states that he was a pretrial detainee during his incarceration at GWHCF; therefore, the court will analyze his allegations under the Fourteenth Amendment.

To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation

10

of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hubbard I*, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[7] In addition, the court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 236, 238 (3d Cir. 2008) (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

---

[7] The *Bell* Court also explained:
> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

441 U.S. at 538–39 (internal quotation marks, citations, and footnote omitted).

In this case, Brandon complains about overcrowding at GWHCF, alleging that he was initially placed in a large holding cell with approximately 30 inmates and was subsequently placed "in a 2 man cell with 2 other guys" and forced to sleep on a "stack a bunk on the floor near the sink and toilet." Compl. at ECF p. 7. Housing multiple inmates in a cell does not alone establish a constitutional violation. *See Hubbard II*, 538 F.3d at 236 & n.6 (explaining that pretrial detainees do not have right "to be free from triple-celling or from sleeping on a mattress placed on the floor"); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Brandon has not established a plausible constitutional violation because he has not alleged that the overcrowded conditions of confinement at GWHCF amounted to punishment. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bell*, 441 U.S. at 542–43 (concluding that double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and average length of incarceration was 60 days); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Hubbard II*, 538 F.3d at 232–35 (concluding that triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *see also Walker v. George W. Hill Correctional*, Civ. A. No. 18-CV-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit"

and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state Fourteenth Amendment claim with respect to allegations of overcrowding). Thus, the complaint fails to state a claim with respect to Brandon's allegations of overcrowding.

Brandon also appears to suggest that he suffered a constitutional violation because he was forced to eat near the toilet in an overcrowded cell. *See* Compl. at ECF p. 7. The practice of requiring inmates to eat in a cell containing a toilet does not violate the Constitution. *See Detainees of Brooklyn House of Det. for Men v. Malcolm*, 520 F.2d 392, 396 n.3 (2d Cir. 1975) ("The discomfort of eating in a cell is not, of itself, an unconstitutional hardship."); *Randall v. Cty. of Berks*, Civ. A. No. 14-5091, 2015 WL 5027542, at *15 (E.D. Pa. Aug. 24, 2015) ("[S]erving a pretrial detainee meals in a cell that can be eaten at his desk, even if the cell has a toilet, does not violate the Due Process Clause of the Fourteenth Amendment."); *Caldwell v. Cabarrus Cty. Jail*, No. 1:12CV586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate Constitution), *report and recommendation adopted*, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013); *Mestre v. Wagner*, Civ. A. No. 11-2191, 2012 WL 299652, at *4 (E.D. Pa. Feb. 1, 2012) ("[A]s other courts have held, we conclude that serving a pretrial detainee meals in a cell that has a toilet does not violate the Due Process Clause of the Fourteenth Amendment."); *Kinser v. Cty. of San Bernardino*, No. ED CV 11-0718-RGK (PJW), 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011) (concluding that plaintiff's allegation that "she has been confined to her cell more than 22 hours a day and that she has had to eat all her meals in her cell in close proximity to her toilet" did not state Fourteenth Amendment claim), *report and recommendation adopted*, 2011 WL 4802850 (C.D. Cal. Oct. 11, 2011).[8] Therefore, the court will

---

[8] There are also numerous decisions reaching a similar conclusion while addressing the Eighth Amendment. *See Herb v. Dauphin Cty. Prison*, Civ. No. 1:12-CV-1402, 2012 WL 3062225, at *2 (M.D. Pa. July 26, 2012) ("Albeit tasteful, being required to eat in his cell under such conditions [i.e., where a foul ammonia odor from the toilet caused plaintiff's eyes to burn] does not amount to an Eighth Amendment deprivation."); *Walters v. Berks Cty. Prison*, Civ. A. No. 11-

13

also dismiss Brandon's claims for relief arising from him having to allegedly eat in his cell while near a toilet.

Brandon also takes issue with his placement in an intake cell with no toilet. *See* Compl. at ECF p. 9. As noted above, Brandon alleges that he and other inmates were forced to use a "cell with a hole in the floor" and had to "urinate in empty milk cartons or plastic bags." *Id.* at ECF p. 7. While unpleasant, Brandon has failed to allege that these conditions amounted to punishment. *See, e.g.*, *McCray v. Wittig*, Civ. A. No. 14-0824 (WJM), 2014 WL 1607355, at *3 (D.N.J. Apr. 21, 2014) (holding that "[b]ecause Plaintiff was confined in the holding cell under deplorable conditions for only two days [without bedding, cleaning supplies, articles of personal hygiene or adequate food], and he did not suffer any physical injury, his allegations do not show that he was unconstitutionally punished, *i.e.*, the facts alleged in the Complaint do not show that Plaintiff endured privation and hardship over an extended period of time"); *George v. Faber*, Civ. A. No. 09-962 (NLH), 2010 WL 2740299, at *4 (D. Del. July 12, 2010) (dismissing conditions of confinement claim as frivolous where, *inter alia*, plaintiff had "no running water [and] no toilet (just a hole in the ground)" and "cell with no toilet paper and lack of water" from "September 2009 until February 2010"). As such, Brandon has failed to state a claim relating to his placement in the intake cell with no toilet.

While unclear whether he is asserting a claim for relief on this basis, Brandon also complains that GWHCF employees failed to provide him with grievance forms when he requested them so that he could complain about the conditions in the intake holding cell. *See* Compl. at ECF

---

6357, 2012 WL 760849, at *1 (E.D. Pa. Mar. 9, 2012) (determining that plaintiff failed to state claim based on allegations that he had to sleep and eat next to a toilet while incarcerated at Berks County Jail); *Flores v. Wagner*, Civ. A. No. 11-1846, 2011 WL 2681596, at *5 (E.D. Pa. July 8, 2011) ("Requiring an inmate to eat in a cell a few feet away from a toilet is insufficient to implicate a conditions of confinement claim that is repugnant to contemporary standards of decency."); *Smith v. United States Penitentiary Lee*, No. 7:11CV00077, 2011 WL 767165, at *2 (W.D. Va. Feb. 25, 2011) (concluding that plaintiff failed to state Eighth Amendment claim based on allegations he was required to eat meals in cell with toilet sometimes filled with excrement).

p. 7. This does not state a plausible claim because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam) ("The District Court correctly noted that an inmate has no constitutional right to a grievance procedure."). Therefore, while not having access to grievance forms would affect the analysis regarding whether Brandon properly exhausted his claims as required by the PLRA, *see* 42 U.S.C. § 1997e(a), it does not provide an independent basis for a constitutional claim.

For Brandon's final claim, he suggests that he did not receive adequate medical care for his elbow. To state a plausible claim for deficiencies in medical care, an inmate's rights are violated under either the Eighth or Fourteenth Amendments if a prison official acts with deliberate indifference to the inmate's serious medical needs. *See Goode v. Giorla*, 643 F. App'x 127, 129 (3d Cir. 2016) ("A deliberate indifference claim, under either the Fourteenth or Eighth Amendment, requires acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." (footnote and internal quotation marks omitted)). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Nothing in the complaint, however, provides any facts to plausibly suggest that any officials at GWHCF were deliberately indifferent to Brandon's serious medical needs.[9] Accordingly, Brandon cannot maintain his claims regarding his medical care at this time.

---

[9] The court notes that a deliberate indifference claim "requires proof beyond simple negligence, and medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Goode*, 643 F. App'x at 129 (citation and internal quotation marks omitted).

### III.     CONCLUSION

For the foregoing reasons, the court will grant Brandon leave to proceed *in forma pauperis* and dismiss his complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). This dismissal will be without prejudice to Brandon's right to file an amended complaint within 30 days if he can cure the defects identified above. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (explaining that "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile").

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.